## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BANK OF AMERICA, N.A.,     )
75TH METCALF ASSOCIATES, LLC,     )
NANCY GEE, RUTH HANNA and     )
THOMAS MILLAR,     )
     )
     **Plaintiffs,**     )
     )     **CIVIL ACTION**
**v.**     )
     )     **No. 11-2481-KHV**
KANSAS CVS PHARMACY, LLC,     )
     )
     **Defendant.**     )
_____)

## MEMORANDUM AND ORDER

On July 25, 2011, Bank of America, N.A., 75th Metcalf Associates, LLC, Nancy Gee, Ruth Hanna and Thomas Millar filed a Petition For Forcible Detainer (Doc. #1-1) in the District Court of Johnson County, Kansas. Plaintiffs alleged that Kansas CVS Pharmacy, LLC, had terminated a lease agreement by failure to pay rent. Under 28 U.S.C. §§ 1332, 1441 and 1446, CVS removed the action to this Court, asserting diversity jurisdiction. See Defendant's Notice Of Removal (Doc. #1) filed August 25, 2011. CVS brings counterclaims for declaratory judgment and unjust enrichment. This matter is before the Court on defendant's Motion For Partial Summary Judgment (Doc. #13) filed October 21, 2011 and Plaintiffs' Cross-Motion For Partial Summary Judgment (Doc. #15) filed November 11, 2011.

CVS seeks partial summary judgment on its declaratory judgment counterclaim, arguing that the lease has not terminated because (1) plaintiffs initiated this action in bad faith to force re-negotiation of the lease and (2) it timely cured any default. To the extent the Court finds otherwise, CVS seeks a declaration that it has no obligations under the lease to construct an "adequate separating wall." Plaintiffs seek partial summary judgment on the same issues,

arguing that CVS breached the lease and failed to cure, thereby terminating the lease.  Plaintiffs further argue that termination of the lease does not relieve CVS of its obligation to construct a wall.  For substantially the reasons set forth in plaintiffs' cross-motion and the reasons set forth below, the Court overrules the CVS motion for partial summary judgment and sustains plaintiffs' cross-motion for partial summary judgment.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  Id. at 251-52.

A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.  The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those "dispositive matters for which [the nonmoving party] carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  And, while the Court views the record in a light most favorable to the party opposing summary judgment, the nonmoving party may not rest on its pleadings but must set forth specific facts.  Id.

2

The nonmoving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted.  Liberty Lobby, 477 U.S. at 250-51.

### Facts

The material facts, with disputes resolved in favor of the non-moving party or parties, are as follows:[1]

On June 2, 2006, the lease which is the subject of this litigation was assigned to CVS, which operates a pharmacy and MinuteClinic on the leased premises at 75th and Metcalf in Overland Park, Kansas.  The original 51-year term of the lease expired on September 30, 2008, but the lease contains a 25-year renewal option (Article XIV) which CVS exercised to extend the term from October 1, 2008 until September 29, 2033.

Article II ("RENT") sets forth the rent terms of the original lease.  Article II (b) and (c) required CVS to (1) pay rent of $11,656.00 per year in equal monthly payments of $971.33 and (2) in any lease year where gross sales exceed $5,000,000.00, furnish plaintiffs a statement of gross sales and pay an additional $1,200.00 within 120 days after the end of the lease year.[2]

---

[1]    In the reply in support of its motion for summary judgment, CVS relies upon facts which do not appear in the statement of facts and are unsupported by the record, and the Court disregards them.

[2]    At their own expense, plaintiffs may examine and audit CVS books to verify the amount of gross sales by requesting to do so within 120 days after CVS delivers its statement of gross sales.

Article II states in relevant part as follows:

(continued…)

Article XIV ("RENEWAL OF OPTION") governs the 25-year renewal option period.   It incorporates the rent provisions from Article II and requires CVS to pay, within 120 days after the end of the respective lease year, the difference between 1/2 of one percent of its gross sales and the amounts it pays in Base Rent and Flat Sales Rent.[3]

---

For the use of said premises Landlord reserves and Tenant covenants and agrees to pay to Landlord at such place or places at such place or places as Landlord from time to time may designate in writing to Tenant rent as follows:

(a) As rental during the first two (2) lease years, rental in the amount of $7,286 per annum, payable in equal monthly installments, in advance, in the first day of each year;

(b) During the last forty-nine (49) years of the lease term an annual rental of $11,656 per annum payable monthly, in advance, on the first day of each month in the amount of $971.33 per month;

(c) Additional rent shall be payable in any lease year in the event the gross sales of the Tenant or its subtenant arising out of the operation of business conducted on the leased premises exceeds the gross sales for the year of $5,000,000.00, and in the event of gross sales in excess of said sum then the rental for the year in which said gross sales exceed said sum shall be increased in the amount of $1,200 and shall be paid within 120 days after the end of said lease year,

and in addition such other sums that accrue by virtue of the provisions of this lease.

[3]   In that regard, Article XIV states in relevant part as follows:

In such event of renewal, the terms, conditions and provisions of this lease shall be binding upon and shall govern the parties during said extended term.   The rentals during said twenty-five (25) year term shall be the same as provided for in Article II (b) and (c), however, if in any lease year during the twenty-five (25) year renewal term should a sum derived by multiplying the gross sales as heretofore defined made in, from or upon the leased premises by Tenant, its subtenant and licensees, by one-half of one percent (1/2 of 1%) exceeds the rentals paid under Article II (b) and (c) for the respective lease year, then the annual rent for that lease year shall be increased in the amount of the excess of said sum over the

(continued…)

4

Article XII ("REMEDY UPON DEFAULT") sets forth the provisions for remedy and default.  It basically gives CVS 30 days to cure the nonpayment of "any installment of rent" and 90 days to cure any nonperformance of "any other covenant or condition."  If CVS does not do so, the lease shall be forfeited at without further notice.[4]

Article XVI allows CVS to extend improvements upon the property beyond the lot lines. However, CVS is required to, if requested by the landlord at the expiration of the lease, construct an adequate separating wall along the property line so as to give adequate support and separation to the improvements on the leased property.

---

rentals paid under Article II (b) and (c).  Such additional rent shall be due and payable within 120 days after the end of the respective lease year.

[4]   Specifically, Article XII states in relevant part as follows:

In the event Tenant at any time shall fail to pay any installment of rent within thirty (30) days after written notice that the same was not paid when due, or in the event Tenant shall fail or neglect to perform or observe any other covenant or condition herein contained on Tenant's part to be performed or observed for ninety (90) days after written notice of such default from Landlord, this lease shall be forfeited at the election of Landlord without further notice to Tenant or any other person subject to the provisions of this Article XII; provided, however, if any default for which notice has been given as aforesaid is remedied within the period of grace applicable thereto as stated in this article, then this lease shall be considered to be in full force and efffect [sic], the same as if no such default had occurred . . . .

In the event any default (other than in the payment of rent) for which notice has been given as aforesaid, because of its nature, cannot be cured completely or is not cured completely within the periods of grace heretofore allowed, such default shall be deemed to have been remedied for the purposes of this article if the correction thereof shall have been commenced within said grace period or periods and shall, when commenced, be diligently prosecuted to completion . . . .

5

For the lease years for 2008-2009 and 2009-2010, CVS paid plaintiffs the rent due under Article II and provided a statement of its gross sales within the 120-day period.  It did not know that the Article XIV percentage rent provision became effective on October 1, 2008.  It therefore did not pay percentage rent for the 2008-2009 lease year by January 28, 2010, or for the 2009-2010 lease year by January 28, 2011.

On April 12, 2011, plaintiffs sent CVS a notice of default for "failing to pay rent due pursuant to Article XII of the Lease."  The notice did not state the amount of delinquency or specify how long CVS had to cure the default, but referred to the renewal option and Article XII.

CVS logged the letter in its "Default Database" and stated "Please Respond in 30 business days."  On April 25, 2011, CVS sent a letter which asked plaintiffs to clarify the basis for the notice of default.  Plaintiffs did not respond except to send a notice to vacate on May 26, 2011.  After receiving the notice to vacate, CVS forwarded it, the lease, the notice of default and its April 25 clarification request to Kristine L. Donabedian, CVS Senior Legal Counsel, for investigation.  Neither plaintiffs nor their counsel communicated with Donabedian between May 26 and June 3, 2011.  Donabedian discovered the "percentage rent" provision in Article XIV and on June 3, 2011, mailed plaintiffs five checks totaling $66,345.83.[5]  The payments reflected the percentage rent sums due for the 2008-2009 and 2009-2010 lease years.  The payments did not deduct the flat sales rent which CVS paid for those two years.  CVS therefore overpaid by $2,400.00 and on June 8, 2011, it notified plaintiffs of the overpayment.

After receiving the checks, plaintiffs' counsel engaged in numerous email communications with Donabedian about what would happen if plaintiffs negotiated the checks.

---

[5]      At plaintiffs' request, CVS divides all rent payments by five and issues plaintiffs five separate checks.

Specifically, plaintiffs' counsel told Donabedien that plaintiffs would negotiate the checks only if CVS would not interpret doing so as a waiver of plaintiffs' rights and remedies, if the parties could not amicably resolve the matter.  Donabedian initially refused but later agreed to plaintiffs' demand.  Plaintiffs negotiated the checks the day before they filed their state court action on July 25, 2011.  They have not refunded the $2,400 overpayment.

### Analysis

Plaintiffs allege a Kansas state law forcible detainer claim, arguing that the lease automatically terminated because CVS failed to pay the delinquent rent within 30 days after plaintiffs notified CVS of its default.  Defendant brings counterclaims for unjust enrichment and a declaratory judgment that the lease is not terminated.

Both sides seek summary judgment on the CVS declaratory judgment claim.  CVS argues that the lease is not terminated because (1) plaintiffs breached the covenants of good faith and fair dealing by initiating this action in bad faith to force re-negotiation of the lease and (2) it timely cured any default because the delinquent rent due under Article XIV is not an "installment of rent" and is thus subject to the 90-day cure period, rather than the 30-day cure period.  To the extent the Court finds otherwise, it seeks a declaration that it has no obligations under Article XVI(b) to construct an "adequate separating wall."  Plaintiffs counter that the lease is terminated because (1) CVS failed to timely cure its default under the lease, which plainly provides a 30-day cure period for failure to pay rent and (2) plaintiffs did not breach the implied covenant of good faith and fair dealing by enforcing their contractual rights under the lease.  They further argue that termination of the lease does not relieve CVS of its obligation to construct a wall.  For substantially the reasons set forth in Plaintiffs' Cross-Motion For Partial Summary Judgment (Doc. #15), the Court overrules the CVS motion and sustains plaintiffs' cross-motion.

7

Because this is a diversity action, the Court applies the substantive law of the forum state, in this case, Kansas.  Advantage Homebuilding, LLC. v. Md. Cas. Co., 470 F.3d 1003, 1007 (10th Cir. 2006).  In Kansas, the primary rule for interpreting written contracts is to ascertain the parties' intent.  If the terms of the contract are clear, the intent of the parties is to be determined from the contract language without applying rules of construction.  Carrothers Constr. Co. v. City of S. Hutchinson, 288 Kan. 743, 751, 207 P.3d 231, 239 (2009).  Reasonable contract interpretations are favored under the law, which presumes that the parties understood their contract and that they had the intention which its terms import.  Id.; Iron Mound, L.L.C. v. Nueterra Healthcare Mgmt., L.L.C., 44 Kan. App. 2d 104, 113, 234 P.3d 39, 45 (2010).  If the language of a written lease is clear and can be carried out as written, there is no room for rules of construction.  KPERS v. Russell, 269 Kan. 228, 236, 5 P.3d 525 (2000).  The interpretation of a contractual provision should not be reached merely by isolating a particular sentence or provision, but by construing and considering the entire contract from its four corners.  Iron Mound, 44 Kan. App. 2d at 111, 234 P.3d at 44.

## I.   CVS Failed To Cure Its Breach Within The 30-Day Cure Period

CVS argues that the rent payments which it missed were not "installments of rent" and thus are subject to the 90-day cure period rather than the 30-day cure period in Article XII.  In so doing, it attempts to differentiate between the payments due under Article II (b), which it deems "installments" because they are payable monthly, and payments due under Article II (c) and Article XIV, which are not due monthly and therefore – it argues – not "installments of rent" subject to the 30-day cure period in Article XII.  CVS cites Merriam-Webster for the definition of "installment" and urges the Court to interpret "installment" as monthly rent payments.  CVS contends that to find that rent payments based upon gross sales are subject to the 30-day cure

period would render the word "installment" meaningless and disregard the intent of the lease.

Mindful of its obligation to review the language of the lease and enforce it in its plain, ordinary and popular sense as a matter of law, the Court disagrees.  Payless Shoesource, Inc. v. Travelers Cos., Inc., 585 F.3d 1366, 1369 (10th Cir. 2009).   After reviewing the entire agreement, the Court agrees with plaintiffs that the rent payments at issue are more properly characterized as "installments of rent" than as a "covenant or condition" and are thus subject to the 30-day cure provision in Article XII.

As CVS notes, the Court must construe and consider the entire instrument from its four corners, rather than isolate one particular sentence or provision.  Johnson Cnty. Bank v. Ross, 28 Kan. App. 2d, 8, 10-11, 13 P.3d 35 (2000).  CVS then urges the Court to isolate the word "installment" and construe it to limit the type of rent payments which are subject to the 30-day cure period.  This interpretation is unreasonable, particularly given how and where the word "installment" otherwise appears in the lease as a synonym for "payment."  For example, Article II (a), which assesses annual rent for the first two lease years, contains the phrase "equal monthly installments."  Article II (b), which assesses annual rent during the last 49 years of the lease, omits the word "installments" and merely states that rent is payable "monthly."   Article III, which deals with taxes and excepted taxes, states that

> [i]*nstallments* due and payable during the first and last years shall be prorated between the parties.   In the event any special assessment taxes be levied and assessed against the leased premises which are payable or may be paid in *installments*, Tenant shall be required to pay only such *installments* thereof as become due and payable during the life of this lease as the same become due and payable. (emphasis added)

Another clue appears in Article XII, which differentiates between rent payment defaults and non-monetary defaults, not between different types of rent payments.   As between the

9

interpretation espoused by CVS, which differentiates among different types of rent payment defaults, and plaintiffs' interpretation, which differentiates between rent payment defaults and non-monetary defaults, the Court finds the latter interpretation more reasonable.  Because CVS did not cure its breach within the 30-day period, the Court overrules the CVS motion for summary judgment and sustains plaintiff's cross-motion on this issue.  Specifically, the Court finds as a matter of law that CVS did not timely cure its breach.

II.       **Plaintiffs Did Not Breach the Covenant of Good Faith and Fair Dealing**

CVS argues that the Court should deem its default cured because plaintiffs violated the covenant of good faith and fair dealing.  Specifically, CVS argues that plaintiffs engaged in bad faith when they (1) waited 923 days after Article XIV became effective and 437 days after the first percentage rent payment became due to send a notice of default; (2) misstated which lease provision was in default; (3) failed to advise CVS of its deadline to cure; (4) ignored its request for clarification; (5) initially refused to negotiate CVS's payments; and (6) now dispute the accuracy of those payments.  For substantially the reasons stated in plaintiffs' motion, the Court finds that these arguments are without merit, and pauses only to mention a few points.

Kansas courts imply a duty of good faith and fair dealing in every contract.  Waste Connections of Kan., Inc. v. Ritchie Corp., 43 Kan. App. 2d 655, 669-70, 228 P.3d 429 (2010). This means that parties should not intentionally or purposely do anything to prevent the other party from carrying out its part of the agreement or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.  Id. Conduct which amounts to "bad faith" includes evasion of the spirit of the bargain, abuse of a power to terminate the contract, and interference with or failure to cooperate with the other party's performance.  Meier's Trucking Co. v. United Const. Co. Inc., 237 Kan. 692, 699-700,

704 P.2d 2 (1985).

As plaintiffs note, the notice of default did not misstate which lease provision was in default.  As to the other points which CVS raises, the duty of good faith and fair dealing did not require plaintiffs to help CVS to cure its breach or minimize the effect thereof.  The Court thus overrules CVS's motion and sustains plaintiff's cross-motion on this ground.

**III.     CVS's Obligation Under Article XVI (b)**

Finally, CVS argues that if the Court deems its defaults not cured and the lease thus terminated, it has no obligation under Article XVI (b) to construct a separating wall because that provision only triggers upon the natural *expiration* of the lease, not a forced *termination*.  It turns again to the dictionary to point out the differences between the two words and then reasons that this language must mean that the drafters intended to impose an obligation to construct a separating wall only after the parties "amicably parted ways" or the lease naturally expired, because it is "difficult to believe" the drafters intended to make a defaulting tenant return to the premises to construct a separating wall.

The Court disagrees and again adopts the reasoning set forth in plaintiffs' cross-motion and reply.  While the provision at issue could have been drafted more artfully, it is more reasonable that the parties intended that a separating wall be constructed at the end of the lease, however that end was reached, than only upon an amicable separation of the parties.  Many lease-end scenarios exist which contemplate construction of a separating wall under less-than-amicable circumstance.  The Court thus overrules CVS's motion and sustains plaintiffs' cross-motion on this ground, and finds that as a matter of law, the lease obligates CVS to construct an adequate separating wall along the property line if plaintiffs so request in writing.

**IT IS THEREFORE ORDERED** that defendant's Motion For Partial Summary

11

Judgment (Doc. #13) filed October 21, 2011 be and hereby is **OVERRULED.**

      **IT IS FURTHER ORDERED** that Plaintiffs' Cross-Motion For Partial Summary Judgment (Doc. #15) filed November 11, 2011 be and hereby is **SUSTAINED.**

      Dated this 25th day of September, 2012 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
